ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 APR 20 PM 1:45

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAVID JONES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 310-090 |
| | ) | |
| SHIRLEY HOLLOWAY, Unit Manager, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, who is currently incarcerated at the Calhoun State Prison in Morgan, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983.[1]  Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984).  Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

---

[1] Although he is currently incarcerated at Calhoun State Prison, Plaintiff's complaint concerns events that allegedly occurred at Wheeler Correctional Facility ("WCF") in Alamo, Georgia.

## I. BACKGROUND

Plaintiff names the following Defendants in his complaint: (1) Shirley Holloway, a Unit Manager at WCF; (2) Robin Holton, the Chief of Unit Management at WCF; and (3) Ralph Kemp, the Warden at WCF. (Doc. no. 1, pp. 1, 4.) Plaintiff alleges that during his confinement at WCF, he was required to live and sleep "in constant illumination" because certain lights in his unit were kept on at all times. (Id. at 5-6.) In particular, Plaintiff explains that his unit was an "open dormitory setting" in which seven light fixtures throughout the unit, each approximately four feet long and containing three 32-watt florescent bulbs, were kept on 24 hours a day. (Id. at 8-9.) According to Plaintiff, the lights were situated directly over the inmates' bunk beds and shone brightly throughout the night. (Id. at 9.) Plaintiff alleges that the lights in his unit, though deemed "security lights," were not the standard security lights used in other units, which presumably shine at a lower intensity. (Id. at 8-9.) Plaintiff further alleges that prison guards would routinely make noise by intentionally slamming doors during their nightly rounds and that night dormitory orderlies were required to buff and wax the floors during sleeping hours. (Id. at 5-6, 9.) According to Plaintiff, these conditions caused sleep deprivation and various attendant injuries, including psychological problems and fatigue. (Id. at 9.)

Plaintiff states that he brought the lighting and noise issues to the attention of Defendant Holloway, his unit manager, first in an informal conversation and later in a pair of "Prisoner's Information Requests." (Id. at 6-7.) Plaintiff further states he later submitted

2

a third information request regarding the same issues to Defendant Kemp. (Id. at 8.) Defendant Kemp forwarded the request to Defendant Holton, who was the Chief of Unit Management as well as Defendant Holloway's supervisor. (Id. at 8.)

Plaintiff avers that he received a response from Defendant Holton on August 6, 2008, explaining that prison guards were required to make their nightly rounds by checking the living quarters throughout the night and that the doors and lights were the same throughout the prison. (Id.) Plaintiff alleges that he also received a written response from Defendant Holloway on August 13, 2008, in which she told Plaintiff that Defendant Holton's response was sufficient and informed Plaintiff that "if that dorm is too lite [sic] for you – we can move you to a cell house." (Id. at 7.) According to Plaintiff, after it became apparent that his initial complaints were not going to lead to a satisfactory resolution, he filed an informal grievance against Defendant Holloway on August 21, 2008. (Id. at 9-10.)

Plaintiff claims that on August 28, 2008, Defendant Holloway came to his dorm and, in the presence of the other inmates in the dorm, announced, "Is there anyone else in here has a problem with the lights at night besides [Plaintiff]? Please speak up because I'm moving you too." (Id. at 10.) Plaintiff alleges that he asked Defendant Holloway why he was being moved, at which point she "falsely accused Plaintiff of verbally threatening her and ordered officers to lock him down on pending disciplinary investigation status." (Id.) Plaintiff maintains that he was held in segregation pending a disciplinary investigation for 11 days, but that no disciplinary report was filed against him. (Id.)

3

According to Plaintiff, after his release from segregation, he was housed in a different unit, in which the lights were kept on throughout the night in the same manner as his previous housing unit. (Id.) Plaintiff also complains that his change in housing assignment caused him to be removed from a special faith-based rehabilitation program whose participants are all housed in the unit from which he had been transferred. (Id. at 10, 12.) Plaintiff alleges that he attempted to reenter the faith-based program, but was denied permission to do so because Defendant Holloway would not allow him to transfer back into his previous housing unit. (Id. at 12.) In addition, Plaintiff filed a formal grievance, which was denied by Defendant Kemp, who responded in his denial of Plaintiff's grievance, "Per Statement of [Defendant Holloway], security lights through out the facility stay on at night . . . . The lights in question are security lights." (Id. at 11 & Ex. C.)

Plaintiff contends that the conditions of confinement at WCF violate the Eighth Amendment and that Defendant Holloway violated the First Amendment by taking actions against him in retaliation for his August 21st informal grievance. (Id. at 15-16.) Plaintiff has also asserted claims based on alleged violations of his due process and equal protection rights, along with various statutory and constitutional state law claims. (Id.) Plaintiff requests injunctive relief as well as monetary damages, and he seeks to proceed against each Defendant in his or her official capacity. (Id. at 17.)

## II.   DISCUSSION

### A.   Failure to State a Due Process Claim

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a federal due process claim upon which relief can be granted. For the defendants to have committed a due process violation, Plaintiff must have been deprived of life, liberty, or property. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In determining whether a protected interest is implicated and the Due Process Clause attaches in the prison context, the expectations created by state regulations are not conclusive, the nature of the sanctions imposed are. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Sanctions imposed by prison officials on inmates do not implicate due process concerns unless the sanctions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; see also Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999) (no due process violation unless "a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court" or "the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit imposes atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life" (quoting Sandin, 515 U.S. at 484))).

Here, Plaintiff has not alleged the infringement a protected life, liberty, or property

5

interest. Plaintiff alleges that he was placed in segregation pending a disciplinary investigation for 11 days. This sanction did not impose such a hardship on Plaintiff so as to infringe on a protected interest. Sandin, 515 U.S. at 486 (placement in segregated confinement for 30 days does not infringe on protected liberty interest); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (*per curiam*) (placement in administrative confinement for two months does not infringe on protected liberty interest).[2] Plaintiff's removal from the faith-based rehabilitative program at WCF is likewise insufficient to amount to a deprivation of a protected interest. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (noting that prisoners do not have a due process interest in special rehabilitative institutional programs). Accordingly, Plaintiff has failed to state a federal due process claim upon which relief may be granted.[3]

## B.    Failure to State an Equal Protection Claim

Plaintiff has likewise failed to state a federal equal protection claim upon which relief may be granted. Plaintiff alleges that Defendants' "unlawful practice of compelling [him] to live 24 hours a day in constant illumination," combined with the noise to which he was

---

[2]The Court is mindful that the Eleventh Circuit has "assumed" that a disciplinary sanction of twelve months of solitary confinement triggers procedural due process protections under Sandin. See Williams v. Fountain, 77 F.3d 372, 374-75 & n.3 (11th Cir. 1996). The instant case is readily distinguishable from Williams, however, as Plaintiff has not alleged that he was subjected to 12 months of solitary confinement; nor has he alleged any particular atypical hardships imposed as a result of his placement in segregation.

[3]Plaintiff has also attempted to assert a claim for the violation of his due process rights under the Georgia Constitution. (See doc. no. 1, p. 16.) As noted below, the Court will not reach the merits of Plaintiff's state law claims at this time. See infra Part II.E.

exposed, resulted in a violation of his right to equal protection. (Doc. no. 1, pp. 15-16.)

However, "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*); see also Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir.1993) (requiring plaintiff to demonstrate that challenged action was motivated by an intent to discriminate in order to establish equal protection violation).

Here, Plaintiff does not meet these criteria. Though he alleges that prisoners in other units were not exposed to constant illumination, he fails to allege that the difference in lighting is based on any constitutionally protected interest. Rather, Plaintiff's allegations suggest that the difference in lighting among the units at WCF resulted from the way that the units are structured; that is, he states that prison officials exposed prisoners to constant illumination in all the "open dormitory" style units, whereas prisoners in units with separate cells were not exposed to 24-hour illumination. (See doc. no. 1, p. 8.) Therefore, Plaintiff has failed to state a federal equal protection claim upon which relief may be granted.[4]

C.   **Claims for Injunctive Relief Are Moot**

An inmate's claim for injunctive relief against prison officials is ordinarily subject

---

[4]As with his due process claim, Plaintiff has also attempted to assert a claim for the violation of his right to equal protection under the Georgia Constitution. (See doc. no. 1, p. 16.) As noted below, the Court will not address the merits of Plaintiff's state law claims at this time. See infra Part II.E.

7

to dismissal for mootness when the prisoner is transferred to another prison and is no longer under the control of the prison officials against whom injunctive relief is sought. Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Absent class certification, an inmate's claim for injunctive relief and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred."). Here, Plaintiff requests injunctive relief[5] against Defendants, all of whom are prison officials at WCF. (Doc. no. 1, p. 17.) However, since the time of the events alleged in his complaint, Plaintiff has been transferred from WCF, first to Smith State Prison and later to Calhoun State Prison, where he is currently incarcerated. (Doc. no. 10.) There is no indication that he will be transferred back to WCF. Accordingly, his claims for injunctive relief should be dismissed as moot.

### D.    Official Capacity Claims Barred by Eleventh Amendment

In his complaint, Plaintiff states that "[e]ach named Defendant is sued individually and in his or her official capacity." (Doc. no. 1, p. 14.) Notably, however, the Eleventh Amendment bars official capacity claims against state prison officials for monetary damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Thus, all of Plaintiff's official capacity

---

[5]Specifically, Plaintiff requests a "permanent injunction ordering defendants to refrain from their unlawful conduct." (Doc. no. 1, p. 17.) Even if Plaintiff's claims for injunctive relief were not moot, he would not be entitled to the injunctive relief as requested because it is improper to issue a broad injunction merely requiring an individual to obey the law. SEC v. Smyth, 420 F.3d 1225, 1233 (11th Cir. 2005) ("This circuit has repeatedly held that 'obey the law' injunctions are unenforceable." (quoting Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1222 (11th Cir. 2000))).

claims for monetary damages should be dismissed, as they are barred by the Eleventh Amendment.[6]

### E.    State Law Claims

In addition to his § 1983 claims, Plaintiff has attempted to assert a number of state law claims under several Georgia statues and various provisions of the Georgia Constitution. However, as noted in a simultaneously filed Order, the only claims with which Plaintiff should be allowed to proceed are his Eighth Amendment conditions of confinement claim and First Amendment retaliation claim. Although the Court has determined that these claims should survive initial screening, it is possible that they may fail if faced with a motion to dismiss or motion for summary judgment. In the event that the federal claims over which this Court has original jurisdiction are dismissed, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). Therefore, as federal jurisdiction over Plaintiff's state law claims remains an unsettled issue, the Court finds it unnecessary and inappropriate to reach the merits of such claims at this early stage of the case.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that

---

[6]Having determined that Plaintiff's claims for injunctive relief should be dismissed as moot, see supra Part II.C, it follows that all of Plaintiff's official capacity claims should be dismissed, either because they are for injunctive relief, and are therefore moot, or because they are for monetary damages, and are therefore barred by the Eleventh Amendment.

Plaintiff's federal equal protection and due process claims be dismissed for failure to state a claim upon which relief may be granted. The Court further **RECOMMENDS** that Plaintiff's claims for injunctive relief be **DISMISSED** as moot and that Plaintiff's official capacity claims for monetary damages be **DISMISSED** because they are barred by the Eleventh Amendment. As noted above, the Court finds it unnecessary to address the merits of Plaintiff's purported state law claims at this time.

SO REPORTED and RECOMMENDED this 20th day of April, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE